UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **FRANK DETORIE, M.D. AND MARGARET DETORIE** Plaintiff, | ) ) ) ) | |
| v. | ) | CASE NO.06-65T |
| **MERCK & CO., INC.** and **CAROL DEBIASIO** Defendants. | ) ) ) ) ) | |

**MOTION OF THE PLAINTIFFS, FRANK DETORIE, M.D. AND MARGARET DETORIE, TO REMAND THIS ACTION TO THE PROVIDENCE COUNTY SUPERIOR COURT OF RHODE ISLAND**

Now come the Plaintiffs, Frank Detorie, M.D. and Margaret Detorie, and hereby move, pursuant to 28 USC § 1447(c), that this Court remand the present action to the Providence County Superior Court in Rhode Island, because the Plaintiff and the co-defendant, Carol DeBiasio, are residents of Rhode Island. Consequently, there is incomplete diversity and this Court lacks subject matter jurisdiction pursuant to 28 USC § 1332.

As grounds for this Motion, the plaintiff respectfully submits that the defendant, Merck & Co., Inc., has not met, and cannot meet, its burden of establishing complete diversity of citizenship under 28 USC § 1332. Removal was, therefore, improper, under 28 USC § 1441(b) and § 1446. The Notice of Removal, filed by Merck on February 8, 2006, contends that complete diversity of citizenship exists among and between the

parties.[1] However, that contention is based entirely upon Merck's inaccurate and unsupported assertion that the non-diverse defendant, DeBiasio, was fraudulently joined as a party to this action. Merck's Notice of Removal mischaracterizes the extent of the specific allegations and claims set forth in the Complaint against Ms. DeBiasio and it fails to reference or acknowledge numerous additional factual allegations within the Complaint demonstrating the legitimate basis for the plaintiff's claims against the non-diverse defendant, DeBiasio.

In view of the fact that the burden of proving fraudulent joinder "is a heavy one", the fact that all factual allegations in the Complaint must be accepted by this Court "in the light most favorable to the plaintiff" and the fact that "any contested issues of fact and any ambiguities of state law must be resolved" in favor of the plaintiff, *see, Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003), the Plaintiffs submit that the Defendant, Merck, cannot meet its burden of establishing fraudulent joinder. Consequently, they maintain that this Court lacks subject matter jurisdiction, due to incomplete diversity. As further grounds for this Motion, the plaintiff submits the enclosed Memorandum of Reasons for Granting the Motion, pursuant to Local Rule 7.1 (b) (1).

WHEREFORE, the Plaintiffs respectfully requests that this Court allow their Motion to Remand, and enter an Order remanding this action to the Providence County Superior Court in Rhode Island.

---

[1] The original Complaint asserts only state law claims, including allegations of negligence, intentional misrepresentation, negligent misrepresentation, wrongful death, strict product liability. breach of warranty and failure to warn, under Rhode Island law. Merck does not suggest in its Notice of Removal that the Plaintiffs' action involves any federal question, arising under the Constitution, treaties or laws of the United States, nor does it claim any basis for jurisdiction other than its incorrect assertion of complete diversity of citizenship.

Respectfully submitted,
Frank Detorie, M.D. and Margaret Detorie
By their attorney,

Joseph L. Doherty, Jr., BBO # 127280 (MA)
Doherty& Quill
225 Franklin Street, 26th Floor
Boston, MA 02110
(617) 217-2837

## CERTIFICATION OF LOCAL ASSOCIATE COUNSEL

I certify that I have read and join in the foregoing Motion, and acknowledge and agree to observe the requirements of Local Rule 5 in its entirety and as it related to the participation and responsibilities of local associate counsel.

John Quattrocchi, III
Bar # 109 (RI)
Twin Rivers Building
2 Douglas Pike
Smithfield, RI 02917
(401)231-3700

**CERTIFICATE OF SERVICE**

I, Joseph L. Doherty, Jr., attorney for the Plaintiffs, Frank Detorie, M.D., and Margaret Detorie, do hereby certify that on this 8th day of March, 2006, I served a copy of the within document by mailing a copy thereof, postage prepaid, to the following counsel:

Christine K. Bush, Esq.
Duffy, Sweeney & Scott, LTD
One Turks Head Place, suite 1200
Providence, RI 02903
(401) 455-0700

Joseph L. Doherty, Jr., BBO # 127280 (MA)
Doherty& Quill
225 Franklin Street, 26th Floor
Boston, MA 02110
(617) 217-2837

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **FRANK DETORIE, M.D. AND MARGARET DETORIE**<br>Plaintiff,<br><br>v.<br><br>**MERCK & CO., INC.** and **CAROL DEBIASIO**<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.06-65T |

**MEMORANDUM OF REASONS FOR GRANTING THE MOTION OF THE PLAINTIFFS, FRANK DETORIE, M.D. AND MARGARET DETORIE, TO REMAND THIS ACTION TO THE PROVIDENCE COUNTY SUPERIOR COURT OF RHODE ISLAND**

## I. INTRODUCTION

This is an action alleging negligence, intentional misrepresentation, negligent misrepresentation, wrongful death, strict product liability. breach of warranty and failure to warn, under Rhode Island law, against two Defendants, Merck & Co., Inc., (hereinafter "Merck"), and one of Merck's sales representatives, Carol DeBiasio, (hereinafter "DeBiasio"). The action arises out of the distribution of the drug Vioxx, by the Defendant, DeBiasio, to the Plaintiff, Frank Detorie, M.D. Dr. Detorie took Vioxx, which he received ***directly*** from the Defendant, DeBiasio, on a regular basis from 1999 until after April of 2003. On October 1, 2002, Dr. Detorie, who was otherwise in excellent health, sustained blockages in his coronary arteries and suffered a myocardial infarction. Thereafter, he suffered a left internal capsule stroke, in April of 2003, resulting in permanent physical injuries. Dr. Detorie's myocardial infarction and his stroke were caused directly by his use of Vioxx, which had been supplied to him by the

Defendant, Merck, through Merck's authorized sales representative, DeBiasio. (Complaint – Paragraph 23).

On September 17, 2001, the Defendant, Merck, received a written warning from the FDA, advising Merck that it's methods and practices in marketing, promoting, advertising and distributing Vioxx, ***through its <u>sales</u> <u>representatives</u>*** and through other channels, were in direct violation of FDA standards and regulations, due to the fact that Merck knew that studies performed relating to Vioxx had demonstrated ***significantly increased*** cardiovascular risks but, nevertheless, continued to promote Vioxx as having essentially ***no*** cardiovascular risks. (Complaint – Paragraphs 11-14; see also, copy of September 17, 2001, FDA Warning Letter, attached hereto as Exhibit "A").[1] Rather than accepting and following the FDA's September 17, 2001, request that Merck and its sales representatives undertake "a comprehensive plan to disseminate corrective" information, which would have included issuing a "Dear Healthcare provider" letter by direct mail to "all healthcare providers who were, or may have been exposed to the violative promotion" of Vioxx, in order to "correct false or misleading impressions and information", (Exhibit "A"), Merck challenged the letter and ***refused*** to comply with the FDA's warnings until approximately April, 2002.

Merck's refusal to comply with the FDA's Warning Letter was consistent with its prior deceptive marketing practices relating to Vioxx, which did not come to light until after Merck withdrew Vioxx from the market on September 30, 2004, (due to the substantial cardiovascular

---

[1] As stated in the September 17, 2001, Warning Letter from the FDA to Raymond V. Gilmartin, President and CEO of Merck, (within the paragraph entitled "Oral Representations") the FDA notified Merck that:

> "Merck ***<u>sales</u> <u>representatives</u> have engaged in false or misleading promotional activities*** that also minimize the potentially serious MI results observed in the VIGOR trial". (Emphasis supplied).

risks associated with the drug). As described in a November 4, 2004, on-line article from the British Medical Journal, *The Lancet*, (copy attached hereto as Exhibit "B"), Merck's marketing practices included "a document intended for its ***sales* representatives,**" which discussed how to avoid questions "raised by physicians about Vioxx—it was labeled ***'Dodge Ball Vioxx'***."[2]

## II. PROCEDURAL BACKGROUND

The Plaintiff filed the Complaint in this matter on September 30, 2005, and served the Complaint upon both Merck and DeBiasio on January 9, 2006. The Defendant, Merck, removed this action to the United States District Court for the District of Rhode Island on February 8, 2006. The Plaintiffs do not challenge the fact that the amount in controversy exceeds $75,000. However, the Plaintiffs do contest Merck's claim of fraudulent joinder, which is the sole ground asserted by Merck for removal.

Although the 30 day period set forth in 28 USC § 1447(c), does not apply to the Plaintiff's present Motion to Remand, (because the Motion challenges removal exclusively on the ground of lack of subject matter jurisdiction), the Plaintiffs have nonetheless filed their Motion to Remand and Memorandum on Wednesday, March 8, 2006, within the 30-day period, (which would expire on March 10, 2006). The Plaintiffs submit, based upon the factual allegations set forth in the Complaint against the Defendant, DeBiasio, that Merck cannot meet its burden of establishing fraudulent joinder. Consequently, there is incomplete diversity, this Court lacks subject matter jurisdiction and this matter must be remanded to the Providence County Superior Court in Rhode Island.

---

[2] Although no discovery has been undertaken at the present stage of this litigation, the Plaintiffs expect that discovery will demonstrate that the Defendant, Carol DeBiasio, working as a sales representative employed by Merck, received and followed similar instructions to "dodge" or evade questions asked by physicians, such as Dr. Detorie, concerning the cardiovascular risks of Vioxx.

## III. ARGUMENT

As the Fifth Circuit stated in *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003), the burden of proving fraudulent joinder placed upon a party removing a state court action to a United States District Court "***is a heavy one***".[3] "***Any doubts*** concerning diversity ***should be resolved against jurisdiction*** and ***in favor of remand*** to the state court". *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990)". (Emphasis supplied). "If there is ***any possibility*** that the plaintiff has stated a cause of action against any non-diverse Defendant, the federal court ***must*** conclude that joinder is proper, thereby defeating complete diversity, and the cause must be remanded." *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.,* 99 F.3d 746, 751 (5th Cir. 1996). (Emphasis supplied). The standard to be applied by the Court is essentially the same as the standard for deciding a Motion to Dismiss under Fed. R. Civ. P. 12 (b) (6), ***not*** the standard applied when considering all of the evidence upon a Motion for Summary Judgment under Fed. R. Civ. P. 56. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990), (noting that the district court, "in the guise of deciding whether the joinder was fraudulent", inappropriately "stepped from the ***threshold jurisdictional issue*** into a decision on the merits"). (Emphasis supplied).

Although Merck has attempted to characterize the Plaintiffs' claims against Ms. DeBiasio simply in terms of a failure to warn of the risks of Vioxx, (implying that Ms. DeBiasio would not

---

[3] In *Bally v. NCAA*, 707 F. Supp. 57, 58 (D. Mass. 1988), the Court observed that:

> the trend of decisions is that removal statutes will be ***strictly construed*** and that ***doubts should be resolved against*** *removal. See Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979) (stating that "it is ***axiomatic*** that ambiguities are generally construed ***against*** *removal*"); *Jones v. General Tire & Rubber Co*., 541 F.2d 660, 664 (7th Cir. 1976) (stating that "the case ***should be*** *remanded* if there is ***doubt*** as to the right of removal in the first instance"). There are two reasons for this trend. First, ***a plaintiff's choice of forum should not be denied lightly***. Second, major ***inefficiencies result*** where a district court's decision that removal was proper is ***ultimately overturned*** on appeal after a full trial on the merits.

be in a position to know all such risks), the Complaint clearly alleges that Ms. DeBiasio not only failed to warn Dr. Detorie, but that she affirmatively ***misrepresented*** information to him concerning the known risks of Vioxx. In the course of her work as a marketing representative employed by Merck, Ms. DeBiasio regularly met with the Dr. Detorie in an effort to promote Merck products, which Dr. Detorie might then prescribe to his patients, thereby creating economic benefit for both Merck and Ms. DeBiasio. She provided him with promotional samples of Vioxx, for his own personal use, which she knew he took over a period of approximately three years, resulting in his myocardial infarction in October, 2002, and his stroke in April of 2003. (Complaint – Paragraph 23).

Merck's Notice of Removal mischaracterizes the specific allegations against Ms. DeBiasio in the Complaint and overlooks numerous additional factual allegations relating to Ms. DeBiasio. For example, in paragraph 2 of the Notice of Removal, Merck states, incorrectly, that:

> ***Most of the allegations*** in the complaint treat DeBiasio and Merck ***the same***, without specifying what conduct on the part of each defendant is alleged to have proximately caused plaintiffs' injuries."

(Emphasis supplied).

Based upon even a cursory reading of the Complaint, Merck's statement is obviously inaccurate. The Complaint states specific factual allegations exclusively against Ms. DeBiasio in paragraphs 4, 7, 10, 15, 24 – 27 and 32 - 35. Of the five separate Counts set forth in the Complaint, Counts I and III present claims exclusively against Merck. However, Counts II and IV present independent causes of action directly and exclusively against Ms. DeBiasio. Only Count V, the derivative cause of action for loss of consortium by Mrs. Detorie, combines her claims against both Merck and DeBiasio. The Plaintiffs allege specifically that the Defendant, DeBiasio, had ***direct*** contact with Dr. Detorie, made specific ***misrepresentations*** to him concerning the known cardiovascular risks associated with Vioxx, "negligently marketed,

promoted and distributed Vioxx" and actually supplied the Vioxx in question to Dr. Detorie, which he took "on a regular/daily basis" from "approximately 1999 until after April of 2003".[4]

Many recent decisions of federal trial and appellate courts in other jurisdictions have addressed the heavy burden placed upon a party seeking removal based upon alleged fraudulent joinder, and the legal standards to be followed in determining whether joinder is proper, in order to defeat removal on diversity grounds. In *Travis, supra*, the Court discussed the fact that standards applied by various courts often appear to be in conflict and observed that "Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion". *Id.,* at 647. By way of example, it cited the following language from *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999):

> To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is ***absolutely no possibility*** that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.

*Griggs*, at 699. (Emphasis supplied). The Court in *Griggs* also held:

> Stated differently, we must determine whether there is ***any reasonable basis*** for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court.

*Griggs*, at 699. (Emphasis supplied).

The *Travis* Court noted that "(a)lthough these tests appear dissimilar, 'absolutely no possibility' vs. 'reasonable basis,' we must assume that they are meant to be equivalent because

---

[4] Paragraph 15 of the Complaint states:

> Plaintiff, Frank Detorie, M.D., took Vioxx on a regular/daily basis from approximately 1999 until after April of 2003. He received the Vioxx from Merck, as promotional samples, supplied to him for his own personal use by Merck's ***authorized representative Carol DeBiasio***. (Emphasis supplied).

each is presented as a restatement of the other". *Travis*, at 647. Coordinating the intent of the above language, the *Travis* Court held:

> The court determines whether that party has ***any possibility of recovery*** against the party whose joinder is questioned. If there is ***arguably*** a ***reasonable basis*** for predicting that the state law ***might*** impose liability on the facts involved, then there is no fraudulent joinder. This ***possibility, however, must be reasonable,*** not merely theoretical.

*Travis*, at 648. (Emphasis supplied).

Applying the *Travis* test to the allegations in the present Complaint against Ms. DeBiasio demonstrates that there is a reasonable basis for imposing liability upon Ms. DeBiasio under Rhode Island law and that the Complaint does not simply create a theoretical possibility. The Complaint alleges that during the course of her direct contact with Dr. Detorie, Ms. DeBiasio intentionally and/or negligently ***misrepresented*** risks that she knew existed in relation to Dr. Detorie's own use of the drug. Ms. DeBiasio's conduct was consistent with the conduct of other Merck sales representatives, which was specifically criticized by the FDA in Exhibit "A". Her actions were also in accordance with the "Dodge Ball Vioxx" instructions provided to Merck sales representatives, referenced in Exhibit "B".

Merck's attempt to mischaracterize and/or ignore the distinct and appropriately pled allegations against Ms. DeBiasio in this action is consistent with its tactics in other Vioxx actions, such as *Smith v. Condell,* 2005 U.S. Dist. LEXIS (N.D. Ill. January 21, 2005), (attached as Exhibit "B" to the Plaintiffs' corresponding Opposition to Merck's Motion to Stay). In *Smith*, the Court soundly rejected Merck's tactics and remanded the action to state court, *sua sponte*, observing that:

> In sum, Merck's assertion of ***fraudulent joinder*** can only be viewed as ***frivolous***. Its counsel's myopic view that it is therefore the only target of this lawsuit is ***flatly belied by the Complaint***. It is an understatement to say that "it appears that the district court lacks subject matter jurisdiction" (*28 U.S.C. § 1447(c)*). As called for by that statute, this action is remanded to the Circuit Court of Cook County.

*Id.*, at page 4. (Emphasis supplied).

Ms. DeBiasio's conduct in the present action is analogous to the conduct of the non-diverse defendant doctor in another Vioxx action against Merck, *Lauderdale v. Merck*, 219 F. Supp. 2d 747 (N.D. Miss. 2002). In *Lauderdale* the Plaintiff's action included claims against a non-diverse physician who had prescribed Vioxx to the Plaintiff's wife prior to her death. The Court allowed the Plaintiff's Motion to Remand,[5] over Merck's objections, ruling:

> In sum, the Plaintiff's complaint, ***taking all allegations set forth as true and resolving all uncertainties of the relevant state law in favor of the Plaintiff, at least raises the possibility*** that he could succeed in establishing a tort claim against the Defendant Dr. Johnson in state court. Accordingly, ***Johnson's citizenship cannot be ignored*** for the purposes of determining subject matter jurisdiction. His presence in this civil action means that the ***complete diversity*** of citizenship necessary to maintain federal jurisdiction over this case ***is absent***. As such, this cause shall be remanded to the Circuit Court of Prentiss County for ultimate resolution.

*Lauderdale*, at 751. (Emphasis supplied).

The claims against Ms. DeBiasio are also analogous to the claims against the non-diverse latex glove ***supplier*** in *Mills v. Allegiance Healthcare Corporation*, 178 F. Supp. 2d 1 (D. Mass.

---

[5] The Court in *Lauderdale* also emphasized that:

> The party alleging fraudulent joinder bears the burden of persuasion, and that burden is ***quite stringent***. In order to prove that a non-diverse party has been fraudulently joined by a plaintiff hoping to defeat diversity, the removing party must demonstrate either "outright fraud in the plaintiff's recitation of jurisdictional facts," or that there is "***absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state Defendant[s] in state court***." In connection with this inquiry, the Fifth Circuit has made clear that the removal statutes are to be construed "strictly against removal and for remand."

*Lauderdale*, at 749. (Internal citations omitted). (Emphasis supplied).

2001). Although Merck relies heavily upon the *Mills* decision, and upon *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62, (D. RI 2002), in paragraphs 16 and 17 of its Notice of Removal, that reliance is misplaced. District Judge Saris did ***not*** deny the plaintiff's Motion to Remand in *Mills* based upon a determination that the plaintiff's claims against the latex glove distributor were not valid under Massachusetts law. Rather, she denied the Motion to Remand based solely upon the fact that the distributor, The Claflin Company, did not begin supplying the defendant manufacturer's brand of gloves to the hospital until ***after*** the plaintiff contracted the latex allergy he claimed as the basis for his damages in the action. Judge Saris explained that ***but for*** this ***temporal discrepancy*** in the plaintiff's claims against the distributor, the plaintiff's claims would otherwise state valid causes of action against a supplier of the gloves. *Mills*, at 7-8. As the Court noted:

> ***Massachusetts law imposes liability on distributors of products for breach of an implied warranty and for negligence.*** Massachusetts imposes strict liability on distributors of products, ***even those who act merely as a conduit and neither alter the product nor contribute to its injuriousness.*** Under Massachusetts law, a plaintiff can recover for negligence and breach of warranty, express or implied, if the plaintiff was a person whom the manufacturer, seller, lessor ***or supplier*** might reasonably have expected to use, consume, "or be affected by the goods."

*Mills*, at 7. (Emphasis supplied). (Internal citations omitted).[6]

The *Gabrielle* decision, by Magistrate Judge Martin of this Court, also relied upon by Merck, is distinguishable from the facts of the present action. The non-diverse defendant in *Gabrielle* was a travel agency against which the Plaintiffs were alleging liability for the unanticipated criminal acts of an unidentified third-party who assaulted them while they were on

[6] Massachusetts law relating to negligence and strict liability in a product liability action is essentially the same as Rhode Island Law, except that Rhode Island law provides separate causes of action for "strict" liability, (tort), and "breach of warranty", (contract), whereas, Massachusetts combines both grounds for recovery under a theory of breach of warranty. *Castrignano v. E.R. Squibb & Sons, Inc.* 546 A.2d 775 (R.I. 1988)

vacation on the Island of St. Kitts. Obviously, the travel agency could not be liable for unforeseeable criminal acts of another, "occurring at a hotel which the travel agent did not own, operate, manage or control", in a foreign country. *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62, 69 (D. RI 2002)

The present action is also distinguishable from the decisions relied upon by Merck in paragraphs 20 through 23 of the Notice of Removal, in support of its contention that "Federal Courts have repeatedly held that pharmaceutical sales representatives owe no duty to warn ***patients*** about risks . . ." (Emphasis supplied). The question of whether sales representatives, under particular circumstances, may or may not have a duty under federal case law to warn "***patients***", with whom they have had ***no contact***, and to whom they have made ***no representations***, is simply irrelevant to the facts and circumstances of the present action, where Ms. DeBiasio obviously did have direct contact with Dr. Detorie and did make direct misrepresentations to him. For example, Merck relies upon cases such as *Catlett v Wyeth, Inc.*, 379 F. Supp.2d 1374 (M.D. Ga. 2004), *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp.2d 272 (S.D.N.Y. 2001), *In re Diet Drugs,* 2004 WL 2203712 at **2-3 (E.D. Pa. Sept. 28, 2004), and *Johnson v. Parke-Davis*, 114 F. Supp.2d 522, 525 ( S.D. Miss. 2000). In ***all*** of those decisions, the respective Courts emphasized the fact that the defendant sales representatives not only had ***no contact*** with the plaintiffs/patients themselves, but in most cases they did not even have any contact with the patients' doctors who prescribed the medications in question to the plaintiffs.

Similarly, in *Staples v. Merck,* 270 F. Supp. 2d 833 (N.D. Tex. 2003), (also involving claims relating to Vioxx), although the Court found fraudulent joinder, it emphasized that its decision was based upon the fact that the non-diverse defendants were simply clinical researchers, rather than employees of Merck, who had ***no contact***, direct or otherwise, with the plaintiffs. The clinical researchers merely conveyed data to Merck that they, themselves, had no

part in interpreting or analyzing. The Court noted that the researchers made ***no representations*** to any of the plaintiffs, or to anyone else, concerning the risks of Vioxx, nor could they have even been aware of those risks based upon their limited involvement with the clinical studies in question. The conduct of Ms. DeBiasio in the present case is entirely different and distinguishable, both in its nature and its magnitude, from the conduct of the clinical researches in *Staples*.

Moreover, many if not most of the cases cited by Merck base their rulings upon the fact that under the state law governing those cases, the various state courts have recognized the "learned intermediary rule". No decision of a Rhode Island state appellate Court has ever recognized or adopted the learned intermediary rule; only one Rhode Island Federal District Court decision, *Gray v. Derderian*, 365 F. Supp. 2d 218 (D. R.I. 2005), has even made reference to that rule. In *Gray*, Senior Judge Lagueux noted that: "***Other*** courts have analyzed similar claims relying on the 'sophisticated user' or 'learned intermediary' defenses". However, he went on to note that: "The Alabama District Court explained that ***referring to these <u>notions</u> as defenses may be <u>misleading</u>*** since they are aspects of defect and proximate causation". *Gray*, at 236. (Emphasis supplied). In denying the Defendant's Motion to Dismiss, the Court, in *Gray*, specifically did ***not*** apply the learned intermediary rule as a bar to the plaintiff's claims under Rhode Island law.

In paragraph 25 of the Notice of Removal, Merck suggests that Ms. DeBiasio cannot be held liable due to the fact that she was acting as an agent of Merck within the scope of her authority. Merck's reliance upon *Cardente v. Maggiacomo Insurance Agency, Inc.,* 108 R.I. 71, 73, 272 A.2d 155, 156 (1971), in support of this contention is entirely misplaced. Clearly, *Cardente* does not stand for the proposition that an individual is completely immune from all tort

liability simply by virtue of the fact that he or she is acting as an agent for a disclosed principle.[7] In *Cardente*, the defendant was an insurance agent with authority to bind the principal/insurance company. Due to that authority, the insurance company was legally bound by the agent's agreement to secure coverage, even though the agent subsequently failed to notify the carrier. The ruling by the Court in *Cardente* simply recognized the obvious fact that the agent could not be liable for negligent ***failure*** to create a binding insurance contract when, in fact, a binding insurance contract ***existed***, based upon the agreement between the authorized agent and the insured, despite the agent's subsequent failure to notify the principal/insurer.

As the Supreme Court of Rhode Island noted in *Stebbins v. Wells,* 818 A.2d 711, R.I. LEXIS 69 (2003), distinguishing *Kennett v. Marquis,* 798 A.2d 416 (R.I. 2002), which had been decided based upon "the general common law rule" of *Cardente*:

> In *Kennett*, we also observed that there was ***no evidence that the sellers' agent had supplied false information.*** *Kennett, 798 A.2d at 419.* ***If she had done so, she could have been liable for supplying false information in a business transaction.*** Id. (citing *Estate of Braswell v. People's Credit Union, 602 A.2d 510, 512 (R.I. 1992)*). Also, we noted that there was ***no evidence*** that the sellers' agent in Kennett ***failed to exercise reasonable care in transmitting the information,*** "***or*** that [sellers' agent] ***knew of the presence of wetlands on the property.***" Id. Nor was there evidence that the sellers' agent ***delivered "false information knowingly or intentionally.***" Id. ***Under these circumstances***, we agreed that the sellers' agent was entitled to judgment as a matter of law.
>
> ***One key difference***, however, between *Kennett* and this case is that ***here some evidence suggests*** that both sets of real-estate ***agents were aware*** that the seller's property ***may*** have been defective because it was susceptible to severe erosion. ***If so***, then, as noted in *Stebbins I*, ***this could give rise to a duty on the part of the agents -- independent of the seller's disclosures -- to disclose this information to the buyer.***

[7] If, while traveling to or from Dr. Detorie's office, Ms. DeBiasio had struck and killed a pedestrian due to negligent operation of her motor vehicle, it would be patently absurd to suggest that she could avoid all potential personal liability for her negligence simply by claiming that she was an authorized agent, acting within the scope of her employment with Merck.

*Stebbins*, at 720. (Emphasis supplied). Moreover, the Court in *Stebbins* held that although the real estate sales disclosure act, G.L. 1956 chapter 20.8 of title 5, did not create a private right of action against real estate agents, "this holding ***does not preclude*** plaintiff's ***separate*** ***causes of action*** against the different defendants in this case for ***negligent omission, negligence***, and breach of fiduciary duty". *Stebbins*, at 716. (Emphasis supplied).[8] In the present action, the Plaintiffs have clearly alleged that Ms. DeBiasio, herself, provided false, incomplete and/or misleading information directly to Dr. Detorie, which constitutes a sufficient basis upon which to impose liability.

Merck's reliance, (in paragraph 25 of the Notice of Removal), upon the Restatement 2nd of Agency, §348, comment (b), and upon *Legg v. Wyeth*, 428 F..3d 1317 (11th Cir. 2005), is similarly misplaced. §348 of the Restatement simply pertains to circumstances, (unlike those alleged in the present action), where an agent innocently conveys information from the principal, which the agent believes to be true. The Plaintiffs in the present action allege that Ms. DeBiasio actively misrepresented the facts and provided information to Dr. Detorie that she knew or should have known to be untrue or inaccurate. Based upon those allegations, which this Court must accept as true for the purposes of the present Motion, Ms. DeBiasio cannot be considered merely to have been a "conduit through which faulty information" was supplied, as was the case in *Legg, supra,* at 1324.

---

[8] See also, *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990), relied upon by Merck at page 5, paragraph 17, of the Notice of Removal, in which the Third Circuit recognized:

> Under Pennsylvania law there is ***a cause of action against employees*** whose fraud and ***misrepresentations contributed to plaintiff's damages, even if these actions were taken in the course of their employment.*** *See Loeffler v. McShane, 372 Pa. Super. 442, 446-47, 539 A.2d 876, 878 (1988)* (quoting *Wicks v. Milzoco Builders, Inc., 503 Pa. 614, 621, 470 A.2d 86, 90 (1983))* ("officer of a corporation ***who takes part in the commission of a tort*** by the corporation is ***personally liable*** therefor");

## V. CONCLUSION

As to the Plaintiffs' strict liability/breach of warranty based claims, Rhode Island law clearly holds that such liability may be imposed upon "the manufacturer ***or supplier*** or seller" of an unreasonably dangerous or defective product. *Parrillo v. Giroux Co., Inc.,* 426 A.2d 1313, 1216 (R.I. 1981). (Emphasis supplied). Ms. DeBiasio was clearly the "supplier" of the Vioxx in question to Dr. Detorie and the Plaintiffs have made sufficient allegations that the product was unreasonably dangerous and defective.

As to the Plaintiffs' negligence based claims, the foreseeability of the risk of injury is "the linchpin in determining the existence of any duty owed". *Splendorio v. Bilray,* 682 A.2d 461 466 (R.I. 1996). Under Rhode Island law, rather than using a "universal test" to determine the existence of a duty, Courts are expected to employ "an ad hoc approach of considering all relevant factors." *Ferreira v. Strack,* 636 A.2d 682, 685 (R.I. 1994). The "risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension". *Builders Specialty Co. v. Goulet,* 639 A.2d 59, 60 (R.I. 1994).

"(T)aking all allegations set forth as true and resolving all uncertainties of the relevant state law in favor of the Plaintiff(s)", *Lauderdale v. Merck*, 219 F. Supp. 2d 747, 751 (N.D. Miss. 2002), the Complaint in this action presents sufficient, appropriately pled allegations to establish: that there was a foreseeable risk of cardio-vascular injury directly to Dr. Detorie; that Ms. DeBiasio provided Vioxx to Dr. Detorie for his personal use and she knew he was taking the Vioxx she provided over the course of several years; that Ms. DeBiasio knew of the risk of harm to Dr. Detorie; that she failed to warn Dr. Detorie of that risk; and that she affirmatively misrepresented information to him concerning that risk. Those facts, if proven at trial, (as the Plaintiffs represent, and as the Court, at this juncture, must assume, they will be proven), are

sufficient to establish liability on the part of Ms. DeBiasio, separate and independent from the liability of Merck.

For the reasons stated above, the Plaintiffs submit that there is no factual or legal basis to support Merck's contention that Carol DeBiasio was fraudulently joined as a party to this action. Merck cannot meet the heavy burden of establishing fraudulent joinder and Ms. DeBiasio's citizenship cannot be ignored. Consequently, there is incomplete diversity among and between the parties, precluding jurisdiction by this Court and requiring remand to the Providence County Superior Court of Rhode Island.

Respectfully submitted,

**PLAINTIFFS, FRANK DETORIE, M.D. AND MARGARET DETORIE**

By their attorney,

Joseph L. Doherty, Jr.
BBO No. 127280 (MA)
DOHERTY & QUILL
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110
(617) 217-2837

DATED: 3-8-06

## CERTIFICATION OF LOCAL ASSOCIATE COUNSEL

I certify that I have read and join in the foregoing memorandum in support of motion, and acknowledge and agree to observe the requirements of Local Rule 5 in its entirety and as it related to the participation and responsibilities of local associate counsel.

John Quattrocchi, III
Bar # 109 (RI)
Twin Rivers Building
2 Douglas Pike
Smithfield, RI 02917
(401)231-3700

## CERTIFICATE OF SERVICE

I, Joseph L. Doherty, Jr., attorney for the Plaintiffs, Frank Detorie, M.D., and Margaret Detorie, do hereby certify that on this 8th day of March, 2006, I served a copy of the within document by mailing a copy thereof, postage prepaid, to the following counsel:

Christine K. Bush, Esq.
Duffy, Sweeney & Scott, LTD
One Turks Head Place, suite 1200
Providence, RI 02903
(401) 455-0700

Joseph L. Doherty, Jr., BBO # 127280 (MA)
Doherty& Quill
225 Franklin Street, 26th Floor
Boston, MA 02110
(617) 217-2837