**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FRANK DETORIE, M.D. and MARGARET DETORIE, | : | |
| Plaintiffs, | : | |
| V. | : | CASE NO. 06-65T |
| MERCK & CO., INC. and CAROL DEBIASIO, | : | |
| Defendants. | : | |

**DEFENDANT MERCK & CO., INC.'S OBJECTION TO**
**PLAINTIFFS' MOTION TO REMAND**

Defendant Merck & Co., Inc. ("Merck") hereby objects to Plaintiffs' Motion To Remand this action to the Providence County Superior Court. As grounds for this Objection, Merck relies on the Memorandum of Law filed herewith.

Respectfully submitted,

DEFENDANT MERCK & CO., INC.

By: ______________________

Robert M. Duffy (#4428)
Christine K. Bush (#5587)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401) 455-0701

Aaron S. Bayer
Wiggin and Dana, LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Tel: (203) 498-4400
Fax: (203) 782-2889
abayer@wiggin.com

March 27, 2006

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Objection was sent by first class mail, postage prepaid, on this 27th day of March, 2006 to:

John Quattrocchi, III, Esq.
Twin Rivers Building
2 Douglas Pike
Smithfield, RI 02917

Joseph L. Doherty, Jr., Esq.
225 Franklin Street, 26th Floor
Boston, MA 02110

Theresa Benson

H:\Clients\Merck\Detorie\Pleadings\USDC RI\Opposition to Motion to Remand.doc

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

FRANK DETORIE, M.D. and
MARGARET DETORIE,

Plaintiffs,

V. CASE NO. 06-65T

MERCK & CO., INC. and
CAROL DEBIASIO,

Defendants.

**DEFENDANT MERCK'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO PLAINTIFFS' MOTION TO REMAND THIS ACTION TO THE PROVIDENCE COUNTY SUPERIOR COURT**

Plaintiffs seek to evade federal jurisdiction by joining their product liability claims against Merck & Co., Inc. ("Merck") — which meet the requirements for federal jurisdiction — with claims against a non-diverse Merck sales representative, against whom they have no valid cause of action under Rhode Island law. Plaintiffs also ask this Court needlessly to expend its judicial resources in deciding issues that should be decided by the MDL court in the Eastern District of Louisiana, which is coordinating the litigation of Vioxx-related cases. This Court should stay the proceedings pending transfer of this case to the MDL court and allow that court to consider plaintiffs' remand motion.

As discussed in detail in Merck's stay papers, the JPML issued a conditional transfer order for this case on March 2, 2006, so that all pre-trial proceedings could be handled by the MDL court. *See* Merck's Reply Memorandum In Support of Stay Motion ("Stay Reply Br."), Exh. A. Nearly 1,800 stay orders have now been granted in Vioxx cases, including more than 300 cases in which plaintiffs sought remand, at least 150 of

which, originating in 9 different states, involve the very same remand issue plaintiffs seek to litigate here — whether a Merck sales representative was fraudulently joined. *See* Stay Reply Br., Exh. E. The JPML has expressly urged federal district courts not to rule on pending remand motions in these circumstances, *see* Stay Reply Br. at 2, and Judge Fallon, who is overseeing the thousands of Vioxx cases before the MDL, has also urged federal courts to issue stays and allow pending remand motions to be decided in the MDL proceedings. *Id.* at 4. These courts have recognized that remand motions and other pre-trial matters can most efficiently and fairly be adjudicated by the MDL court in coordination with the other Vioxx cases before it, and this Court should reach the same conclusion.

Should the Court nonetheless wish to consider the remand motion, it should be denied because, as a matter of law, there is no basis for holding Merck's non-diverse sales representative, Carol DeBiasio, liable for negligence, as she had no duty to warn the plaintiffs here, or for breach of warranty, as she was not a "seller" of Vioxx. Ms. DeBiasio was therefore fraudulently joined. Many federal courts have rejected similar efforts by plaintiffs to defeat federal diversity jurisdiction by joining non-diverse pharmaceutical sales representatives. This Court should do the same.

## ARGUMENT

### I. THE COURT SHOULD DEFER CONSIDERATION OF PLAINTIFFS' REMAND MOTION PENDING MDL TRANSFER

As set forth in Merck's briefing in support of a stay, the majority of courts (including the MDL court presiding over Vioxx cases) have recognized that the best way to ensure that MDL proceedings can achieve their statutory goal of efficient, coordinated proceedings is by staying litigation pending transfer to the MDL court and deferring

resolution of remand motions pending MDL transfer. Deferral is particularly appropriate here because a number of similar cases have already been transferred to the MDL proceeding in which plaintiffs' remand motions raise the very same issue.[1] Having the MDL court decide the cross-cutting jurisdictional issues raised by these cases will ensure that the various cases against Merck and its sales representatives are treated in a uniform manner and that this Court does not enter a ruling that might ultimately be inconsistent with that of the MDL court on like motions.[2] This Court should act in accordance with the request of the JPML and the MDL judge and stay this case so that the MDL court can decide these jurisdictional issues in a coordinated manner.

## II. IF THE COURT CONSIDERS THE MERITS OF PLAINTIFFS' REMAND MOTION, IT SHOULD BE DENIED.

If the Court does consider the merits of the remand motion, it should be denied because the only non-diverse defendant, a Merck sales representative named Carol DeBiasio ("DeBiasio"), was fraudulently joined.

The practice of naming sales representatives as defendants in pharmaceutical product liability cases has been "characterized as a sham" that is designed "to prevent the adjudication of lawsuits against [the pharmaceutical company], the real target, in a federal forum." *In re Diet Drugs*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002); *see also Faircloth v. Merck & Co.*, No. 2:06-cv-184, slip op. at 3 (N.D. Ala. Mar. 2, 2006) (noting 11th Circuit's criticism of "the tactic of joining individual sales representatives in

---

[1] *See, e.g., In the Matter of Civil Actions Against Merck & Co., Inc. as Listed in Attachment 1*, No. 6:05-cv-06659-DGL, slip op. at 3 (W.D.N.Y. March 1, 2006) (staying case because the issue of whether professional sales representatives were fraudulently joined "should be resolved by the MDL court" due to commonality with at least 150 other such cases) (Exhibit B); Stay Reply Br. at 3-4.

[2] *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court] . . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases as to which remand motions are pending]"); Stay Reply Br. at 5-6.

pharmaceutical products liability cases in an effort to defeat a federal court's jurisdiction") (Exhibit C); *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 823-24 (E.D. Va. 2005) (assailing "procedural gamesmanship" in joining non-diverse employee where plaintiff has "no intention of getting a joint judgment" against the employee).

This case is no different; the joinder of DeBiasio is a sham, designed solely to evade federal jurisdiction, and there is no reasonable likelihood that plaintiffs could prevail on their negligence and breach of warranty claims against the sales representative under Rhode Island law.

**A. Fraudulent Joinder Standard**

It is well-settled that a non-diverse party is fraudulently joined where "there is 'no reasonable basis' for predicting liability on the claims alleged" against that party. *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 280 n.4 (S.D.N.Y. 2001); (quoting *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 461 n.3 (2d Cir. 1998)); *see also Catlett v. Wyeth, Inc.,* 379 F. Supp. 2d 1374, 1377 (M.D. Ga. 2004) (same). As this Court has previously recognized, joinder of a non-diverse party is fraudulent when the joinder has no "reasonable basis in law and fact," *Gabrielle v. Allegro Resorts Hotel*, 210 F. Supp. 2d 62, 67 (D.R.I. 2002) (quoting *Mills v. Allegiance Healthcare Corp.,* 178 F. Supp. 2d 1, 4 (D. Mass. 2001)), in other words, when the complaint does not and cannot "establish a cause of action against the non-diverse defendant[] in state court." *Id.* at 66 (internal quotations omitted).

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) (cited approvingly in *Gabrielle*, 210 F.

Supp. 2d at 66); *see also Pampillonia*, 138 F.3d at 461 (noting that fraudulent joinder assessment must be "based on the pleadings"). Because plaintiffs have not submitted any affidavits or supporting documents with their motion to remand, the determination of fraudulent joinder in this case must be based entirely upon the allegations in the Complaint and DeBiasio's statements in her attached affidavit (Exhibit A).

Although plaintiffs' Complaint asserts two causes of action against DeBiasio[3] — negligence and breach of warranty — neither states a viable claim.[4] This is not surprising. As other federal courts have recognized, "in almost every case analyzing the joinder of sales reps, the court denied remand due to fraudulent joinder." *Faison v. Wyeth, Inc.*, 353 F. Supp. 2d 1273, 1277-78 (S.D. Ga. 2004); *see also Legg v. Wyeth, Inc.*, 428 F.3d 1317, 1320-21 (11th Cir. 2005) (noting "dozens of district court decisions finding that Wyeth sales representatives were fraudulently joined as defendants to defeat federal diversity jurisdiction"). Because plaintiffs have no basis for their claim against DeBiasio, Merck respectfully submits that this Court should do the same.

### B. Plaintiffs Cannot State a Negligence Claim Against DeBiasio for Failure to Warn.

There is no reasonable likelihood that plaintiffs can prevail on their negligence claim against DeBiasio because she had no duty to Detorie that could give rise to a negligence claim, either from her role as a sales representative or from any independent knowledge or actions on her part.

---

[3] Plaintiffs' remand motion refers to other causes of action, including "wrongful death," that are not asserted in the Complaint. *See* Pl. Br. at 1.

[4] Plaintiffs' claim for loss of consortium is entirely derivative and dependent upon the success of their other claims. *Olshansky v. Rehrig Int'l*, 872 A.2d 282, 291 (R.I. 2005) (holding that loss of consortium claim must fail where underlying tort and warranty claims fail).

### 1. A Pharmaceutical Sales Representative Acting Within the Scope of Her Employment Has No Duty to Warn Either Doctors Or Patients.

Plaintiffs cannot state a negligence claim against DeBiasio under Rhode Island law unless DeBiasio owed plaintiffs a duty. *Olshansky v. Rehrig Int'l*, 872 A.2d 282, 289 (R.I. 2005). Under the learned intermediary doctrine, it is well-settled that neither a drug manufacturer nor a sales representative owes patients any duty to warn.[5] Rather, the drug manufacturer has a duty to warn the prescribing physician of risks associated with the drug, and the physician, as a "learned intermediary," has a duty to advise patients of those risks before prescribing the drug. As the First Circuit has explained, "[t]he rationale underlying the prescription drug rule is that the prescribing physician, as the 'learned intermediary' standing between the manufacturer and the consumer/patient, is generally in the best position to evaluate the potential risks and benefits of ingesting a certain drug and to advise the patient accordingly. Under this doctrine, the manufacturer's duty is fulfilled once it adequately warns the physician." *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992).

Pharmaceutical sales representatives, in contrast, owe no duty to prescribing physicians, as federal courts have consistently held. *See, e.g., Catlett,* 379 F. Supp. 2d at 1381 ("There is no basis for a claim against a sales representative under the learned intermediary doctrine that imposes a duty on the *manufacturer* of the drug to warn the physicians") (emphasis in original); *In re Diet Drugs,* No. MDL-1203, 2004 WL 1118714 at *4 (E.D. Pa. May 18, 2004) ("in the prescription drug context . . . the duty to warn does not extend to sales representatives"); *Sobkowski v. Wyeth, Inc.,* No. 5:04-CV-

[5] *See, e.g., Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992) ("Where the product is a prescription drug, however, it is widely accepted that the manufacturer's duty to warn runs to the physician rather than the patient"); *Catlett*, 379 F. Supp. 2d at 1379 (same).

96-0C-10GRJ, 2004 WL 3569704 at *5 (M.D. Fla. May 17, 2004) (finding no claim against sales representatives for misrepresenting safety of a drug where they "did not act in their individual capacities and had no special knowledge of any alleged risks" of the drug); *cf. Bloodsworth v. Smith & Nephew*, No. 2:05CV622-D, 2005 WL 3470337, at *7 (M.D. Ala. Dec. 19, 2005) (medical supply manufacturer, not sales representative, had duty to warn surgeon).

The courts' refusal to impose such a duty is consistent with the role of the pharmaceutical sales representative, who is typically not a scientist or a doctor, and is not expected to conduct independent research on drugs being marketed to doctors. Just as the Rhode Island Supreme Court has noted that pharmaceutical manufacturers are the "experts" that "must carefully monitor the new developments and research that pertain to the drugs that they manufacture," *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 782-83 (R.I. 1988), it makes sense to impose a duty to warn only on the manufacturer and the prescribing physician. *See, e.g, Catlett*, 379 F. Supp. 2d at 1381 ("pharmaceutical companies have a duty to warn *only* the physicians who will be prescribing the drug to their patients because the physicians are the ones with the expert medical knowledge regarding the safety and proper use of a particular drug") (emphasis in original); *In re Rezulin,* 133 F. Supp. 2d at 288 (finding that as an agent and employee, a sales representative is "not the one best able to prevent sales of defective drugs") (internal quotations omitted).

In contrast to this established authority, plaintiffs do not cite a single case in which a pharmaceutical sales representative was found to owe a duty to a doctor or a patient. This is unsurprising, as "in almost every case analyzing the joinder of sales reps,

the court denied remand due to fraudulent joinder." *Faison*, 353 F. Supp. 2d at 1277-78; *see also Legg*, 428 F.3d at 1320-21. The only pharmaceutical cases plaintiffs cite do not concern sales representatives,[6] and their other authority, such as a case involving real estate agents, is even farther removed from the context of this case and the controlling case law.[7]

Plaintiffs attempt to distinguish the many cases rejecting tort claims against pharmaceutical sales representatives by claiming that Rhode Island law cannot reasonably be expected to recognize the learned intermediary doctrine. Pl. Br. at 11. This is an extraordinary claim, given that the doctrine is recognized by "48 states, the District of Columbia, and Puerto Rico." *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 806-09 (E.D. Tex. 2002); *see also Knowlton v. Deseret Med., Inc.*, 930 F.2d 116, 120 n.2 (1st Cir. 1991) ("It is generally accepted that in a case involving medical products prescribed or used by a physician or trained medical personnel, the warning runs to the physician not the patient").

[6] Plaintiffs' assertion that DiBiasio's "conduct in the present action is analogous to the conduct of the non-diverse defendant doctor" in *Lauderdale v. Merck & Co.*, 219 F. Supp. 2d 747 (N.D. Miss. 2002) is unfounded. In that case, the plaintiff asserted, in addition to claims against Merck, a medical malpractice claim against the doctor for prescribing Vioxx and Celebrex to plaintiff's wife without considering the alleged dangerous side effects of those drugs. *See Lauderdale v. Merck & Co.*, No. 1:01CV418D-B, 2002 WL 449423, at *2-*3 (N.D. Miss. Feb. 4, 2002). Unlike DeBiasio, the doctor in that case had a duty of care to his patient, separate and apart from any duties belonging to Merck. Similarly, plaintiffs erroneously rely on *Smith v. Condell Med. Cntr.*, No. 05 C 339, 2005 U.S. Dist. LEXIS 3593 (N.D. Ill. Jan. 21, 2005), in which the court found no fraudulent joinder where the plaintiff had alleged medical malpractice claims against a hospital and a number of doctors that were entirely unconnected to the claims against Merck. Here, plaintiffs' claims against DeBiasio are identical to their claims against Merck, for whom she acted as agent.

[7] *Stebbins v. Wells*, 818 A.2d 711 (R.I. 2003), relied upon by plaintiffs, involved real estate agents, who are experts on real estate and are engaged specifically for that purpose, unlike sales representatives who are the conduits of information from their drug company principals. Furthermore, the *Stebbins* Court found that a Rhode Island statute created a limited "duty on the part of real estate agents to disclose to potential buyers of real property any material defects, as defined in the [A]ct," *id.* at 717-18, which further distinguishes *Stebbins* as a basis for imposing a duty on pharmaceutical sales representatives.

The *Norplant* court counted Rhode Island as one of the 48 states that have adopted the learned intermediary doctrine, citing a Rhode Island Supreme Court decision that tacitly accepted the use of a challenged jury instruction that set forth the basic elements of the learned intermediary defense. *Norplant,* 215 F. Supp. 2d at 808 (citing *Hodges v. Brannon*, 707 A.2d 1225, 1227 n.4 (R.I. 1998)). Thus, while the Rhode Island Supreme Court has not yet expressly adopted the learned intermediary doctrine, there is every indication that it will do so,[8] and plaintiffs' unsupported assertion to the contrary provides no support for denying Merck a federal forum.

Plaintiffs also argue that, in the numerous cases rejecting negligence claims against sales representatives, the representatives had no direct contact with the plaintiff, while they allege that DeBiasio gave the Vioxx samples directly to the plaintiff here "for his own personal use." Complaint ¶15; *see* Pl. Br. at 5, 10-11. This bare-bones assertion that she supplied Detorie with Vioxx samples for his own personal use is squarely contradicted by DeBiasio's affidavit.[9] More importantly, it is irrelevant to the legal issue of whether she had a duty to Detorie.

As a sales representative, DeBiasio provided Detorie, at his request, with professional samples of Vioxx not as a patient, but as a physician. *See* DeBiasio Decl. ¶¶ 2, 4. Under the learned intermediary doctrine and the case law concerning sales

[8] The Rhode Island Supreme Court has also adopted the "bulk supplier" rule, an adjacent and related section of the Restatement (Third) on Torts. *See Buonanno v. Colmar Belting Co.*, 733 A.2d 712, 715-16 (R.I. 1999) (adopting bulk supplier rule as set forth in Restatement). Plaintiffs themselves acknowledge that these rules are similar, Pl. Br. at 11, in that both acknowledge that the role of a sophisticated intermediate actor can affect the nature of the duty the original manufacturer owes the ultimate user. *See Gray v. Derderian*, 365 F. Supp. 2d 218, 236 (D.R.I. 2005) (referring to the learned intermediary doctrine as applying to similar claims as the bulk supplier doctrine). The adoption of the bulk supplier rule thus suggests that the Rhode Island Supreme Court would adopt the learned intermediary rule as well.

[9] DeBiasio's affidavit unequivocally states that DeBiasio "never provided Dr. Detorie or any other physician with samples of Vioxx for their personal use" and that she "never suggested that he take Vioxx." DeBiasio Decl. ¶ 4. Plaintiffs have offered no evidence to the contrary.

representatives, it was up to Detorie to use his professional judgment in deciding whether to prescribe the drug for particular patients. The fact that he apparently chose to use the Vioxx samples himself does not alter this fundamental legal principle or somehow transfer Detorie's duty to exercise his professional judgment to DeBiasio as the sales representative. It is clear as a matter of law that DeBiasio owed no duty to warn Detorie either as a doctor or as a patient, and his decision to self-medicate cannot create such a duty.

**2. There Is No Factual Basis In the Complaint or the Evidence to Support A Negligence Claim Against DeBiasio.**

Plaintiffs have alleged no facts to show that DeBiasio had knowledge of the risks allegedly associated with Vioxx, beyond what was conveyed to her by Merck, that could conceivably give rise to an independent duty to warn. The Complaint alleges only that DeBiasio "knew, or should have known, that Vioxx was unreasonably dangerous and/or defective, unsafe for its intended use and did pose cardiovascular risks." Compl. ¶ 10. The Complaint is devoid of specific allegations that she had knowledge of or would have been in a position to evaluate the risks of Vioxx, or that she was privy to information about risks of Vioxx allegedly being concealed by Merck. It thus provides no basis to conclude that DeBiasio, as a sales representative, was anything more than a conduit of information provided to her by Merck. *See Legg*, 428 F.3d at 1324 (holding that without supporting evidence, "there is no reasonable possibility that a[] . . . court would conclude that [the sales representative] personally breached a duty to the plaintiffs").

The only evidence concerning DeBiasio is her affidavit, which makes clear that she had no independent knowledge of the risks of Vioxx and that, consistent with her duties as a sales representative, she communicated only information she received from

Merck.[10] Plaintiffs provide no evidence to contradict these sworn statements or support their negligence claim against DeBiasio.[11]

In support of their claims against DeBiasio, plaintiffs rely heavily on the September 2001 FDA letter to Merck, but that letter focuses on Merck's promotional activities, specifically, promotional audio conferences presented by a doctor on Merck's behalf, a Merck press release, and presentations by a Merck sales representative at two professional conferences. *See* Exh. A to Pls. Br. The letter provides no basis for concluding that Merck's sales representatives generally, let alone DeBiasio in particular, had any independent knowledge of the safety or effectiveness of Vioxx or acted as anything other than conduits of information from Merck. This point is underscored by plaintiffs' allegation that "Merck challenged the [FDA] letter and ***refused*** to comply with the FDA's warning," Pl. Br. at 2 (emphasis in original), which goes to plaintiffs' claims against Merck, the real defendant in the suit. Further, plaintiffs' Complaint makes no allegations as to whether DeBiasio was even aware of the FDA letter, how she became aware of it, what she understood it to mean, and whether Merck ever discussed it with her.[12] This is plainly insufficient to establish an independent duty on the part of DeBiasio to evaluate the implications of the FDA letter and provide a warning to physicians, a duty that would be fundamentally inconsistent with her limited role as a sales representative.

---

[10] Her Declaration makes clear that she had no involvement in the research, evaluation and development of information about Vioxx and provided physicians only with approved prescribing information provided to her by Merck. DeBiasio Decl. ¶¶ 2, 3.

[11] Plaintiffs express the hope that they might be able to develop information in discovery that DeBiasio received instructions from Merck to "dodge" questions from physicians about the risks of Vioxx. Pl. Br. at 3 n.2. The mere hope of discovering some evidence provides no basis for establishing a viable cause of action and, in any event, DeBiasio's affidavit flatly denies that she ever received any instruction from Merck concerning what plaintiffs' label "Dodgeball Vioxx," DeBiasio Decl. ¶ 5.

[12] DeBiasio's affidavit, moreover, provides uncontradicted evidence that she in fact never read or evaluated the FDA letter, nor was she aware of that letter's contents. DeBiasio Decl. ¶ 7.

In short, there is no basis upon which a court could find that DeBiasio had or should have had any independent knowledge about Vioxx that could give rise to a duty to warn the plaintiffs, let alone that she breached that duty. *See, e.g., Legg*, 428 F.3d at 1323-25; *Faison*, 353 F. Supp. 2d at 1278 (finding fraudulent joinder and noting the lack of evidence that the sales representatives had any knowledge of alleged risks associated with the drug); *Catlett*, 379 F. Supp. 2d at 1381-82 (finding fraudulent joinder where evidence that the sales representatives only followed pharmaceutical company script was unrebutted); *Sobkowski,* 2004 WL 3569704 at *5 (finding no claim against sales representatives for misrepresenting drug's safety where they "did not act in their individual capacities and had no special knowledge of any alleged risks" of the drug).

3. **Plaintiffs' General Allegation of "Affirmative Misrepresentation" Cannot Save Their Negligence Claim Against DeBiasio.**

Plaintiffs' motion focuses heavily on the allegation that DeBiasio "affirmatively misrepresented" the risks of Vioxx to Detorie, arguing that this allegation somehow distinguishes this case from the established case law rejecting failure to warn claims against pharmaceutical sales representatives. The Complaint, however, does not include a count against DeBiasio for fraud or intentional misrepresentation and for that reason alone plaintiffs cannot prevail on a cause of action for such claims.

Moreover, even assuming plaintiffs had asserted such a cause of action in the Complaint, they provide no specific, supporting allegations to meet the requirement under Fed. R. Civ. P. 9(b) and Rhode Island R. Dist. Ct. Civ. Rule 9 that a claim of intentional misrepresentation be pleaded "with particularity." The broad, unsupported allegation that DeBiasio "misrepresented . . . to Frank Detorie, M.D., that Vioxx was safe

and did not pose any cardiovascular risks," Complaint ¶ 10,[13] falls far short of that standard. *See LaRoche v. Newport Elec. Corp.*, 1987 WL 859613 at *1 (R.I. Super. Ct. June 1, 1987) (the "requirement of particularity is not a mere technicality lightly to be brushed aside, but is a deliberate, long-standing and widely accepted and approved stricture").

The absence of any specific allegations is particularly telling here. Plaintiffs emphasize that DeBiasio had direct communications with Detorie, meaning that he would be in a position to provide specific information as to what DeBiasio said. DeBiasio's affidavit, moreover, specifically states that "she made no knowing misrepresentations concerning the safety or efficacy of Vioxx," DeBiasio Decl. ¶ 6, and that all of the information she used in speaking with physicians about Vioxx was provided to her by Merck. *Id.* ¶ 2. Plaintiffs offer no evidence to contradict these sworn statements.

Plaintiffs also cannot recast their claim against DeBiasio as one based on misrepresentation because they nowhere allege in the Complaint that Detorie used Vioxx in reliance on DeBiasio's purported misrepresentations. There is no question that reliance is an essential element of a misrepresentation claim under Rhode Island law. *Mallette v. Children's Friend & Serv.*, 661 A.2d 67, 69 (R.I. 1995).

---

[13] Plaintiffs similarly rely on this general allegation in responding to Merck's argument that, as an agent and conduit of information from Merck, DiBiasio cannot be personally liable for actions taken within the scope of her employment. *See* Restatement (Second) of Agency, § 348 cmt. b ("an agent who makes untrue statements based upon information given to him by the principal is not liable because of the fact that the principal knew the information to be untrue"); *see also* cases cited in Merck's Notice of Removal, ¶ 25. Plaintiffs' response is to restate their allegation that DiBiasio "actively misrepresented the facts" to Detorie, but as discussed above, plaintiffs provide none of the specific allegations required to support a claim of misrepresentation and no evidence to contradict DeBiasio's sworn statements to the contrary.

**C. <u>Plaintiffs Cannot State a Breach of Warranty Claim Against DeBiasio.</u>**

Nor is there any reasonable likelihood that plaintiffs can prevail on their warranty claims against DeBiasio. This is so because under Rhode Island law, only a "seller" can be liable for breach of warranty and plaintiffs have not alleged — nor can they — that she was a "seller" of Vioxx. *See* R.I. Gen. Laws §6A-2-313(1) (an express warranty is created by "*the seller*"); R.I. Gen. Laws §6A-2-314(1) (a warranty of merchantability is implied only if "*the seller* is a merchant with respect to goods of that kind"); R.I. Gen. Laws §6A-2-315 (a warranty of fitness for a particular purpose is implied only where "*the seller*" knows the buyer's reliance on seller's skill or judgment); *see also Thomas v. Amway Corp.*, 488 A.2d 716, 720 (R.I. 1985) (plaintiff claiming breach of express warranty bears burden of proving that the statements "made *by the seller*" induced purchase of the product) (emphasis added in each quotation).

Once again, numerous courts in pharmaceutical cases faced with precisely the same question have held that sales representatives are not sellers and therefore cannot be held liable for breach of warranty. *See, e.g., In re Rezulin,* 133 F. Supp. 2d at 286 (finding that sales representatives are not "sellers" for purposes of warranty claims); *In re Diet Drugs,* 2004 WL 1118714, at *4 (sales representatives are not "sellers" for purposes of negligence or strict liability claims); *Johnson v. Parke-Davis,* 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) ("[T]he Court notes that Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product."); *In re Diet Drugs*, 220 F. Supp. 2d at 425 (holding that pharmaceutical sales representatives are not liable for breach of warranty because they are not "sellers"); *Bloodsworth*, 2005 WL

3470337, at *7 (concluding that a pharmaceutical sales representative is not a "seller" for the purpose of warranty claims).[14] Accordingly, plaintiffs' breach of warranty claim against DeBiasio must fail as a matter of law and for this reason too, she is fraudulently joined.

## CONCLUSION

For the foregoing reasons, the Court should defer consideration of plaintiffs' remand motion pending MDL transfer. Alternatively, if the Court addresses the merits of plaintiffs' motion, it should deny plaintiffs' motion to remand because the non-diverse sales representative is fraudulently joined.

[14] Plaintiffs' attempt to save this claim by asserting that DeBiasio is a "supplier" of Vioxx because she physically conveyed the drugs to Detorie must fail. Pl. Br. at 14. Under this strained logic, a Fedex deliveryman would be liable as a "supplier" as well. It is clear that a "supplier" is a distributor, not an employee of the manufacturer. Plaintiffs' discussion of *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1 (D. Mass. 2001), is similarly unhelpful as DeBiasio is not, and is not alleged to be, either a supplier or a distributor. To the extent that plaintiffs assert a strict liability claim, which also requires that defendant be a "manufacturer, supplier, seller, or lessor" for liability to attach, that claim fails for the same reason. *Ruzzo v. LaRose Enters.*, 748 A.2d 261, 269 (R.I. 2000).

DATED: Providence, Rhode Island
March 27th, 2006

Respectfully submitted,

DEFENDANT MERCK & CO., INC.

By: [signature]

Robert M. Duffy (#4428)
Christine K. Bush (#5587)
Duffy Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401) 455-0701

Aaron S. Bayer
Wiggin and Dana, LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Tel: (203) 498-4400
Fax: (203) 782-2889
abayer@wiggin.com

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Memorandum of Law was sent by first class mail, postage prepaid, on this 27th day of March, 2006 to:

John Quattrocchi, III, Esq.
Twin Rivers Building
2 Douglas Pike
Smithfield, RI 02917

Joseph L. Doherty, Jr., Esq.
225 Franklin Street, 26th Floor
Boston, MA 02110

Theresa Benson

H:\Clients\Merck\Detorie\Pleadings\USDC RI\Memo Opposition to Plaintiffs' Motion to Remand.DOC